IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT JACKSON,

Plaintiff

v                                            Civil Action No. RDB-17-2843

DENISE GELSINGER, *et al.*,

Defendants

\*\*\*

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the alternative, Motion for Summary Judgment (ECF 13) filed by Defendants former Assistant Warden Denise Gelsinger and Lieutenant Jeffrey C. Shimko.[1] Upon review of the papers filed, this Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the dispositive motion, construed as a Motion for Summary Judgment[2] IS DENIED.

### Background

The case was instituted upon receipt of a civil rights complaint filed pursuant to 42 U.S.C. § 1983 by self represented Plaintiff Robert Jackson, a Maryland state inmate. ECF 1. Plaintiff alleges that he was erroneously labeled as a member of a Security Threat Group ("STG") and as a result has "continuously suffered punishments and restrictions." ECF 1 at p. 4. Plaintiff also claims that, "[t]his erroneous information in Plaintiff's prison record is certainly something that will influence his liberty interest [in parole] if left uncorrected." ECF 19 at p. 11. He notes that his first parole hearing is scheduled for January of 2019. *Id.*; ECF 19-2 at p. 8.

---

[1] The Clerk shall amend the docket to reflect the correct spelling of defendant Shimko's name.

Lt. Malloy was not served with the Complaint. Counsel shall be directed to provide Malloy's last known address to the Court, under seal.

[2] Defendants' dispositive submission will be treated as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

Plaintiff claims that his right to due process in correcting the error has been denied. ECF 1 at p. 4. Plaintiff claims that each of the named defendants was made aware of the erroneous designation. He specifies that when Lt. Malloy was the Intelligence Officer at the Western Correctional Institution ("WCI"), he acknowledged that there was a misperception regarding documents confiscated from Plaintiff which resulted in the erroneous classification. *Id.* at p. 4. Plaintiff alleges that this same information was kept and made available to Lt. Shimko who is the current Intelligence Officer at WCI. *Id.* Plaintiff claims that Shimko refuses to correct the error and that former Assistant Warden Denise Gelsinger erroneously advised him that all Division of Correction policies were followed. *Id.*

In his opposition response, Plaintiff reiterates his claims that he was not properly validated as a member of a STG in accordance with Division of Correction rules and regulations. ECF 19-1 at pp. 1-2. He has provided a declaration (ECF 19-1) and materials (ECF 19-2) in support of his claim.

As an example of the materials confiscated from him and deemed "gang related," Plaintiff has provided a document entitled "Maryland Branch NABPP-PC Central Committee Directive Rules for Engaging a Political Discussion Circle." ECF 19-2 at p. 3. Plaintiff has also provided the confiscation form prepared by the confiscating officer which simply describes the papers as contraband and "gang related material" without any further explanation. *Id.* at p. 4.

On June 18, 2012, plaintiff wrote to Lt. Malloy, inquiring why he was not placed on a pass list. Plaintiff noted that documents were confiscated from his cell at the North Branch Correctional Institution ("NBCI") on January 5, 2012, and labeled "gang related material." ECF 19-2 at p. 5. He advised Malloy that he challenged that classification of the materials and was to get a hearing, but was transferred to WCI before the issue was resolved. *Id.* Plaintiff maintained

in his letter that the materials were not gang related and that he wanted to know how to proceed to challenge his being labeled a STG member. *Id.* A handwritten response, apparently written by Lt. Malloy dated July 2, 2012, stated:

> Your assumption as to why you were labeled is correct. After I reviewed the materials I could see how it is possible for someone to think it was "gang " related. If you would like to discuss our procedures, please write me and let me know. Let me add, this is not a hearing for you to challenge the claims. It would be the process as to renounciate [sic] your affiliation. Let me know.

*Id.* at p. 5.

In response to Plaintiff's allegations, Defendants contend[3] that on January 8, 2012, Plaintiff was validated, by his own admission, as a member of the STG named the "Black Gorilla[4] Family (BGF)" after having been found in possession of gang related materials. ECF 13-2, ¶ 3 (Shimko Decl.)[5] On January 8, 2013, alleged members of the BGF assaulted Plaintiff.[6] *Id.* The matter was investigated and it was determined that the "assault was possibly a form of sanction or discipline within the gang." *Id.*

---

[3]    Defendants contend that portions of Plaintiff's claim are time barred. The Court disagrees. "Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In Maryland, the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Code Ann., Cts & Jud. Pro. § 5-101. Maryland recognizes that "the 'continuing harm' or 'continuing violation doctrine . . tolls the statute of limitations in cases where there are continuing violations." *Litz v. Md. Dept of Environment*, 76 A. 3d 1076,1089 (2013) (quoting *MacBride v. Pishvaian*, 937 A.2d 233, 240 (2007). Here, Plaintiff alleges that Defendants continuously violated his civil rights in failing to correct the false information in his file . While Plaintiff's claims for damages may ultimately be limited by the three statute of limitations, his request for injunctive relief and his underlying claim are not so limited under Maryland law. *Litz* 76 A.3d at 1089-90.

[4]    The Court observes that the name of the STG is Black Guerilla Family.

[5]    Other documents filed in support of Defendants' dispositive motion (ECF13-3, a redacted email; and ECF 13-4, ARP WCI-1653-15) were not considered by the Court as no records declaration was provided regarding their authenticity.

[6]    Plaintiff disputes that the assault was gang related. ECF 19-1 at p. 2 (Jackson Decl.).

3

Shimko avers that Plaintiff has been advised of the procedure for renouncing his STG membership. *Id.* Shimko spoke with Plaintiff several times regarding his STG validation and the January 8, 2013 assault. *Id.* at ¶ 4. Plaintiff was advised that if he cooperated with the investigation regarding the January 8, 2013 assault he could continue with the renunciation process, however, Plaintiff refused.[7] *Id.*

In January of 2014, Shimko changed Plaintiff's status in the Automated Gang Intelligence (AGI) database to "inactive." *Id.* at ¶ 4. Shimko avers that Plaintiff's status will continue to be monitored for a probationary period of 12 months. *Id.* at ¶ 5. "If no STG activity or any other gang affiliated behavior used in the validation process is observed, reported, documented and verified his request for removal will be revisited." *Id.*

## Standard of Review

Defendants' Motion is styled as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

---

[7] Plaintiff states that the assailants were not identified despite his cooperation with the investigation. ECF 19-1 at p. 2.

4

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because matters outside the pleadings are presented in the Defendants' dispositive motion, it is considered a motion for summary judgment. Fed. R. Civ. P. 12(d).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

Because Plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Analysis

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." To bring a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976), *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). Absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

The interest asserted is a conditional liberty interest in parole not yet granted. It is debatable whether such an interest is enough to invoke the protections of the due process clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 –22 (2005) (holding a liberty interest exists where transfer to super maximum prison meant no possibility of parole during tenure there); compare *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 15 (1979) (finding no constitutional or inherent right of a convicted person to be release on parole before the expiration of a valid sentence).

Prisoners have a limited constitutional right, grounded in the due process clause, to have prejudicial erroneous information expunged from prison files and they are deprived of this right if prison officials refuse to expunge material after being requested to do so. *See Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979). However, it is not sufficient that a prisoner simply disputes evaluations and opinions regarding him; federal courts will not second-guess these evaluations. The erroneous information must have been relied on to a constitutionally significant degree in order to state a claim. *Id.* "If the information is relied on to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake and the due process clause is called into play." *Id.* at 202, citing *Wolff v. McDonnell*, 418 U.S. 539 (1974). Before a civil rights action may be entertained, however, Plaintiff must first request that the information be expunged from his file and establish that there has been a refusal to do so. *Paine*, 595 F.2d. at 202. The evidence before the Court, taken in the light most favorable to Plaintiff, demonstrates that there is a dispute as to whether Plaintiff was properly validated as a STG member and whether he has properly pursued the renunciation process or been thwarted in doing so.

Contrary to Shimko's assertion, Plaintiff denied that the materials confiscated were gang

related and provides some evidence that Malloy agreed they were not. Additionally, Malloy instructed Plaintiff to contact him regarding the renunciation process. It appears, based on Shimko's averment that if Plaintiff cooperated with the investigation of the assault the renunciation process would be resumed, that Plaintiff did in fact begin the process. Plaintiff avers however, again contrary to Shimko's declaration, that he did cooperate with the investigation regarding the assault and that the inmates involved were not gang members.

Additionally, Defendants fail to explain why Plaintiff's gang affiliation was changed to inactive in January of 2014, and what the practical implication of the change means for Plaintiff. Nor have Defendants explained why, despite Shimko's declaration that Plaintiff's status would be monitored for a probationary period of 12 months and if no STG activity occurred his request for removal would be revisited, Plaintiff's status remains "inactive" over four years later and his status has apparently not been revisited.[8]

## Conclusion

For the aforementioned reasons, the Motion to Dismiss, or in the Alternative for Summary Judgment is construed as Motion for Summary Judgment and IS DENIED WITHOUT PREJUDICE. The parties shall file any additional dispositive motions within 60 days. A separate Order follows.

AUGUST 13, 2018
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[8] Given the limited record before the Court, Defendants' contention that they are entitled to qualified immunity will be not considered at this time.

8