# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT JACKSON, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-17-2843 |
| DENISE GELSINGER, *et al.*, | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the alternative, Motion for Summary Judgment (ECF 29) filed by Defendants former Assistant Warden Denise Gelsinger, Lieutenant Jeffrey C. Shimko, and former Lieutenant Michael Malloy. Plaintiff has responded. ECF 33. Upon review of the papers filed, this Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, the dispositive motion, construed as a Motion for Summary Judgment[1] IS GRANTED.

## Background

In denying without prejudice Defendants' previously filed dipositive motion, this Court summarized the facts of the case as follows:

> The case was instituted upon receipt of a civil rights complaint filed pursuant to 42 U.S.C. § 1983 by self represented Plaintiff Robert Jackson, a Maryland state inmate. ECF 1. Plaintiff alleges that he was erroneously labeled as a member of a Security Threat Group ("STG") and as a result has "continuously suffered punishments and restrictions." ECF 1 at p. 4. Plaintiff also claims that, "[t]his erroneous information in Plaintiff's prison record is certainly something that will influence his liberty interest [in parole] if left uncorrected." ECF 19 at p. 11. He notes that his first parole hearing is scheduled for January of 2019. *Id.*; ECF 19-2 at p. 8.
>
> Plaintiff claims that his right to due process in correcting the error has been denied. ECF 1 at p. 4. Plaintiff claims that each of the named defendants was made aware

---

[1] Defendants' dispositive submission will be treated as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

of the erroneous designation. He specifies that when Lt. Malloy was the Intelligence Officer at the Western Correctional Institution ("WCI"), he acknowledged that there was a misperception regarding documents confiscated from Plaintiff which resulted in the erroneous classification. *Id.* at p. 4. Plaintiff alleges that this same information was kept and made available to Lt. Shimko who is the current Intelligence Officer at WCI. *Id.* Plaintiff claims that Shimko refuses to correct the error and that former Assistant Warden Denise Gelsinger erroneously advised him that all Division of Correction policies were followed. *Id.*

In his opposition response, Plaintiff reiterates his claims that he was not properly validated as a member of a STG in accordance with Division of Correction rules and regulations. ECF 19-1 at pp. 1-2. He has provided a declaration (ECF 19-1) and materials (ECF 19-2) in support of his claim.

As an example of the materials confiscated from him and deemed "gang related," Plaintiff has provided a document entitled "Maryland Branch NABPP-PC Central Committee Directive Rules for Engaging a Political Discussion Circle." ECF 19-2 at p. 3. Plaintiff has also provided the confiscation form prepared by the confiscating officer which simply describes the papers as contraband and "gang related material" without any further explanation. *Id.* at p. 4.

On June 18, 2012, plaintiff wrote to Lt. Malloy, inquiring why he was not placed on a pass list. Plaintiff noted that documents were confiscated from his cell at the North Branch Correctional Institution ("NBCI") on January 5, 2012, and labeled "gang related material." ECF 19-2 at p. 5. He advised Malloy that he challenged that classification of the materials and was to get a hearing, but was transferred to WCI before the issue was resolved. *Id.* Plaintiff maintained in his letter that the materials were not gang related and that he wanted to know how to proceed to challenge his being labeled a STG member. *Id.* A handwritten response, apparently written by Lt. Malloy dated July 2, 2012, stated:

> Your assumption as to why you were labeled is correct. After I reviewed the materials I could see how it is possible for someone to think it was "gang" related. If you would like to discuss our procedures, please write me and let me know. Let me add, this is not a hearing for you to challenge the claims. It would be the process as to renounciate [sic] your affiliation. Let me know.

*Id.* at p. 5.

In response to Plaintiff's allegations, Defendants contend[] that on January 8, 2012, Plaintiff was validated, by his own admission, as a member of the STG named the "Black Gorilla[] Family (BGF)" after having been found in possession of gang related materials. ECF 13-2, ¶ 3 (Shimko Decl.)[] On January 8, 2013, alleged members of the BGF assaulted Plaintiff.[6] *Id.* The matter was investigated and it was

2

determined that the "assault was possibly a form of sanction or discipline within the gang." *Id.*

Shimko avers that Plaintiff has been advised of the procedure for renouncing his STG membership. *Id.* Shimko spoke with Plaintiff several times regarding his STG validation and the January 8, 2013 assault. *Id.* at ¶ 4. Plaintiff was advised that if he cooperated with the investigation regarding the January 8, 2013 assault he could continue with the renunciation process, however, Plaintiff refused.[7] *Id.*

In January of 2014, Shimko changed Plaintiff's status in the Automated Gang Intelligence (AGI) database to "inactive." *Id.* at ¶ 4. Shimko avers that Plaintiff's status will continue to be monitored for a probationary period of 12 months. *Id.* at ¶ 5. "If no STG activity or any other gang affiliated behavior used in the validation process is observed, reported, documented and verified his request for removal will be revisited." *Id.*

---

[6]Plaintiff disputes that the assault was gang related. ECF 19-1 at p. 2 (Jackson Decl.).

[7]Plaintiff states that the assailants were not identified despite his cooperation with the investigation. ECF 19-1 at p. 2.

ECF 20 at 1-4.

In an email from Shimko to administrative staff dated January 28, 2016, Shimko summarizing the history of Plaintiff's STG designation as follows:

> Mr. Jackson was validated as a member of a Security Threat Group on 01/16/2012 while housed at the North Branch Correctional Institution. By his own admission, he was found to be in possession of documents that were deemed, "gang related material." The documents were reviewed by Intel staff, contained language related to by-laws or rules specific to BGF, and used as part of the validation process. I have also reviewed the material and concur with that assessment. Mr. Jackson was transferred to WCI on 4/25/2012 and our local data base was updated with his BGF designation. On January 8, 2013, Mr. Jackson was severely assaulted in his cell by three or four other inmates when his door came open to report to the dining hall for his morning meal. An extensive investigation was initiated as a result of a request for remedy he filed on the matter. During the Investigation, it was revealed to his Unit Manager through a confidential informant that Mr. Jackson was assaulted by members of the BGF as a form of sanctioning or discipline for some internal infraction he committed within the group. Interestingly enough, that event details an exact article of the By-Laws of the

3

> Constitution for the BGF that he had in his possession and were used in his validation process. Due to these considerations and the documentation that exists, I am not compelled to request or recommend that the validation be lifted or removed from his file. However, Mr. Jackson was rendered "inactive" as a BGF member in January of 2014 in response to his continued denial.

ECF 33-1 at p. 12.

On November 5, 2018, Shimko wrote to Major Wigfield at Headquarters IID advising:

> Inmate Jackson identified above was validated as a member of the Black Guerilla Family Security Threat Group in January of 2012. While at WCI in January of 2013, inmate Jackson was the victim of a violent assault requiring intense medical attention and placement on administrative segregation pending further investigation. Interviews with inmate Jackson regarding these circumstances yielded little information relating to the basis of his attack. However, information received from informants developed through Intelligence staff, indicated that inmate Jackson's assault was possibly an internal sanction by the BGF for some transgression committed either with or against the group. It was following this incident that inmate Jackson began to contest and renounce any affiliation with the BGF. Through internal complaints and following communication he forwarded to DOC Headquarters, Jackson was rendered inactive with the BGF in January of 2014. His STG alert was removed from our local data base as well and, a probationary period initiated. Information received to date from credible sources indicates that he is no longer affiliated or embraced by the BGF threat group. However, inmate Jackson was involved in another serious incident on 7/29/2018 where two additional groups were identified as responsible. Although not BGF-related, his role in this most recent incident remains of concern regarding his current allegiances. He has subsequently been transferred to another Maximum security facility as a result. At this time, I recommend that his validation with the Black Guerilla Family be removed. He will remain an inmate of interest to the Intelligence Department and, should information present, he may be re- validated at a future date.

ECF 29-2 at 1. As a result of this memo, the gang affiliation was removed and his status in the Offender Case Management System and Automated Gang Intelligence databases changed to reflect this status. *Id.*, p. 3. Processing of the status change was delayed due to the limited resources

4

allocated between WCI and NBCI as one intelligence officer is responsible for monitoring and handling STG affiliations for over 1,700 inmates. ECF 29-4, ¶ 4.

Jackson was convicted in 1999 of first-degree murder and use of a hand gun during a crime of violence. ECF 19-2 at 8. He was sentenced to life plus 20 years consecutive. ECF 19-2 at 8; ECF 33-1 at 10. He became eligible for parole consideration on January 9, 2011. ECF 33-1 at 10. Plaintiff's parole recommendation form was completed on April 24, 2014, and indicated his next administrative review was to take place in January of 2019. ECF 19-2 at 8. There is no indication that the gang affiliation in Plaintiff's file was considered in determining the next review date. *Id.*

## Standard of Review

Defendants have filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the Complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pled allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature. *See Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, Plaintiff has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.

2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

Because he is proceeding pro se, Plaintiff's submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, this Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

## Analysis

A. <u>Injunctive Relief</u>

Plaintiff's request for injunctive relief is now moot because the contested information has been removed from his file. "'[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir.2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "'The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *Id.* (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)).

Under 42 U.S.C. § 1983, an actual controversy must exist at all times while the case is pending. *See Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974). It is possible for events subsequent to the filing of the complaint to make an injunctive relief request moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). This is so even though such a case presented a justiciable controversy at an earlier point in time and an intervening event rendered the controversy

moot. *See Calderon v. Moore*, 518 U.S. 149, 150 (1996). Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained . . . ." *See Lewis v. Continental Bank* Corp, 494 U.S. 472, 480 (1990). To the extent that Plaintiff is seeking injunctive relief; the claim was mooted when the contested information was removed from his file.

B. Respondeat Superior

Plaintiff has pointed to no action or inaction on the part of Warden Gelsinger that caused him constitutional injury. To the extent Plaintiff intended to hold Gelsinger liable based on her supervisory position, it is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Thus Gelsinger's status alone does not subject her to liability. Under § 1983, any liability imputed to supervisory officials must be supported by evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted). Plaintiff fails to establish that Gelsinger in any way played a part in designating Plaintiff as a member of a STG. He has therefore failed to set forth sufficient factual allegations to state a cognizable claim of supervisory liability as to Gelsinger. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("holding federal pleading standards require "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation"); *Iqbal*, 556 U.S. at 678 (2009) (holding that although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

C. Due Process

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." To succeed on a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Imprisonment is deprivation of a liberty interest, but it is constitutional, provided that the conviction is valid and "the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976), *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). Plaintiff does not challenge his conviction. Rather, he alleges that a condition of his confinement—that is, his purportedly erroneous STG designation—is unconstitutional.

Indeed, prisoners have a limited constitutional right, grounded in the due process clause, "to have prejudicial erroneous information expunged from their prison files," and they are deprived of this right if prison officials refuse to expunge material after being requested to do so. *See Paine v. Baker*, 595 F.2d 197, 202-03 (4th Cir. 1979). However, "it is not sufficient that the inmate disputes evaluations and opinions regarding him"; federal courts will not "second-guess the[se] evaluations." *Id.* The erroneous information must have been relied on "to a constitutionally significant degree" in order to state a claim. *Id.* "If the information is relied on to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake and the due process clause is called into play." *Id.* at 202 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

Inmates generally have no liberty interest in obtaining a particular security classification, earning diminution credits, holding a prison job, or transferring to a particular correctional facility. There is no constitutional right for an inmate to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Sandin v. Conner*, 515 U.S. at 484 (holding that protected liberty interests are generally limited to freedom from restraint that imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life); *McKune v. Lile*, 536 U.S. 24, 26 (2002)(stating that the "decision where to house inmates is at the core of prison administrators' expertise"); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (no constitutional right to a "particular security or custody status"); *Meachum*, 427 U.S. at 225 (holding that the due process clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system").

Generally, lack of opportunity to earn or apply diminution credits is not an atypical and significant hardship implicating due process protections. *Meachum*, 427 U.S. at 225-26; *see Robinson-Bey v. Corcoran*, No. L-00-3452, 2001 WL 34799270, at *2 (D. Md. Apr. 12, 2011)("There is no constitutional right to diminution credits."). Furthermore, prisoners do not have a constitutionally protected right to work while detained or incarcerated, to remain in a particular job once assigned, or to earn diminution credits at that job. *See Awalt v. Whalen,* 809 F. Supp. 414, 416-17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F.2d 812, 812-13 (4th Cir. 1978). Prisoners do not have a constitutional right to access educational or rehabilitative programs absent a showing of significant hardship not evident here. *See Moody v. Daggett,* 429 U.S. 78, 88 n.9 (1976); *Bowring v. Godwin*, 551 F.2d 44, 48 n.2 (4th Cir. 1977).

These decisions recognize that the correctional institutions need to maintain order and discipline, and matters of security classification are reserved to the sole discretion of prison

officials. *See Slezak*, 21 F.3d at 594; *Sandin*, 515 U.S. at 482 (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"). The expertise of prison officials in matters of security must be given due deference. *See Sandin*, 515 U.S. at 482.

Nor does the Constitution create a protected liberty interest in the expectation of early release on parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Jago v. Van Curen*, 454 U.S. 14, 18 (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest). Without a protected liberty interest in parole, a prisoner typically cannot mount a challenge against a state parole review procedure on procedural or substantive due process grounds. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir.1997). Moreover, it is well-settled that a Maryland inmate has no colorable federal constitutional interest in parole or in a parole rehearing. *See Bryant v. Maryland*, 848 F.2d 492 (4th Cir. 1988); *see also Swarthout v. Cooke*, 562 U.S. 216 (2011) (no liberty interest in parole unless arising from statutes or regulations); *Greenholtz*, 442 U.S. 1, 7 (1979); (same); *Patuxent Institution Bd. of Review v. Hancock*, 329 Md. 556, 583, 620 A.2d 917 (1993) (a liberty interest in parole in Maryland does not arise until inmate signs the Order for Parole to indicate acceptance of the conditions of the parole); *McLaughlin–Cox v. Maryland Parole Commission*, 200 Md. App. 115, 24 A.3d 235 (2011) (Maryland statutes governing parole consideration do not create a liberty interest protected by the Fifth and Fourteenth Amendments to the U.S. Constitution).

Here, Plaintiff's general reference to his parole lacks any allegation of specific harm. In the absence of any allegation of constitutional injury, no cognizable claim is presented, and summary

judgment will be entered in favor of Defendants. Because Plaintiff cannot show that his STG status caused denial of parole or deprivation of a constitutionally protected liberty interest, his claims do not trigger due process. *See Meachum*, 427 U.S. at 225-29; *Sandin*, 515 U.S. at 484; *Altizer*, 569 F.2d at 813. Absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Plaintiff failed to meet his burden under *Paine v. Baker, supra,* because the allegedly false information was not relied upon to a constitutionally significant degree. Plaintiff's bald allegation that the STG designation could have some impact on his parole review date is insufficient. Notably, apart from generally stating the gang member designation has an impact on parole decisions, Plaintiff does not provide facts to suggest that his parole was actually adversely affected by the STG designation.

When Plaintiff disputed his STG status, he was advised of the means for renouncing any STG affiliation, but he refused to participate in the administrative process. Nevertheless, the STG designation was ultimately removed from Plaintiff's prison file. The removal occurred before his parole eligibility review scheduled for January of 2019. Thus, even when the facts are viewed in the light most favorable to Plaintiff there is no genuine issue of material fact as to whether a constitutional due process violation has occurred, and Defendants are entitled to judgment in their favor as a matter of law.

To the extent Plaintiff alleges that Defendants misinterpreted or misapplied Division of Correction regulations or directives in "validating" him as a member of a STG, his claim fails. To the extent any written directive was not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir.1987).

D. Qualified Immunity

Even if the Court found Defendants violated Plaintiff's constitutional rights, they would nevertheless be entitled to summary judgment based on qualified immunity. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In particular, . . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A public official is entitled to qualified immunity unless (1) viewing the allegations in the light most favorable to the plaintiff, the facts alleged show that the officer's conduct violated a federal statutory or constitutional right; and (2) the unlawfulness of the conduct was "clearly established" at the time of the incident in question. *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 589 (2018); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A right is "clearly established" if, at the time of the officer's conduct, the law was "sufficiently clear" that every "reasonable official would understand that what he is doing" is unlawful. *Wesby*, 138 S. Ct. at 589 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This standard is met if the existence of the right is "settled law" based on "controlling authority" or "a robust consensus of cases of persuasive authority." *Id.*

Taking Plaintiff's allegations as true, both Lt. Shimko and Lt. Malloy followed procedures for evaluating and assessing Plaintiff's gang affiliation status, which included review of documentation Plaintiff had in his possession as well as information received from a confidential informant. When Plaintiff contested the designation, Defendants made him aware of the procedure to be followed to renounce his affiliation. Shimko and Malloy provided Plaintiff access to all of the process he was due in order to challenge the allegedly erroneous information. Plaintiff cannot defeat the motion for summary judgment because at the time that Shimko and Malloy dealt with his gang affiliation they understood that Plaintiff could contest the designation through established procedures but he failed to do so. There is no indication that a reasonable official would have understood their conduct, relative to Plaintiff's gang affiliation, was unlawful. Considering the "objective reasonableness" of Defendants' action, assessed in light of the legal rules that were "clearly established at the time" the action was taken, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), Defendants are entitled to summary judgment.

## Conclusion

For the aforementioned reasons, the Motion to Dismiss, or in the Alternative for Summary Judgment is construed as Motion for Summary Judgment and IS GRANTED. A separate Order follows.

AUGUST 6, 2019
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE